IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JPMORGAN CHASE BANK, N.A.,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-3851 |
| | : | |
| **CHERYL A. FRANCO, et al.,** | : | |
| Defendants. | : | |

MEMORANDUM

**SITARSKI, M.J.**                                                                                           February 15, 2023

Presently pending before the Court are the Motion for Summary Judgment filed by Plaintiff JPMorgan Chase Bank, N.A. ("Plaintiff") (Pl.'s Mot. for Summ. J., ECF No. 28), the response in opposition to the motion filed by Defendants Cheryl A. Franco and Frank A. Franco (Defs.' Resp., ECF No. 29), and Plaintiff's reply brief in further support of its motion (Pl.'s Reply, ECF No. 30). For the reasons that follow, Defendant's Motion for Summary Judgment shall be **GRANTED**.[1]

**I.    FACTS AND PROCEDURAL BACKGROUND**[2]

This action arises out of a mortgage, loan agreements, line of credit notes, and repayment

---

[1] Plaintiff has also filed a separate breach of contract action for monetary relief against Defendants Dando Vida, LLC ("Dando Vida"), Dando Vida – Malawis 005, LLC ("Dando Vida 005"), and Dando Vida – Malawis 007, LLC ("Dando Vida 007"), CSJ Enterprises, L.P., and Franco V, L.L.C. (Case No. 19-cv-3852). Plaintiff moves for summary judgment in the other matter (*id.*, Pl.'s Mot. for Summ. J., ECF No. 40), and the Court disposes of its motion in a separate memorandum and order.

[2] As required at this stage of the proceeding, the Court views the evidence in the light most favorable to Defendants as the non-moving parties. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

guaranties executed by Defendants and others ("Loan Documents") concerning two loans ("Loan 1" and "Loan 2") made by Plaintiff.

Pursuant to the terms of a line of credit note ("Contract 1 Note"), Plaintiff made Loan 1 on or about December 22, 2017 to Dando Vida, Dando Vida 005, and Dando Vida 007 (collectively, "Borrowers") in the amount of $1,114,000.00.  (Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶ 3, Ex. A).  The Borrowers also entered into a construction loan agreement ("Contract 1 Loan Agreement") with Plaintiff in connection with Loan 1.  (*Id.*).

On or about November 18, 2016, Dando Vida, Dando Vida 007, and Plaintiff entered into a business loan agreement ("Contract 2 Loan Agreement") for Loan 2.  (*Id.* at ¶ 6, Ex. C).  Dando Vida and Dando Vida 007 also executed a promissory note in the amount of $1,023,000.00.  (*Id.*).  The Borrowers subsequently executed another line of credit note ("Contract 2 Note") on or about August 14, 2018 in the amount of $972,227.88.  (*Id.* at ¶ 7, Ex. D).

Each line of credit note specifies that the Borrowers shall pay the outstanding balance and interest on the unpaid principal balance computed on the basis of the "Adjusted LIBOR Rate." (*Id.* Ex. A, Contract 1 Note at 1, Ex. D at 1).  The "'LIBOR Rate' means the London interbank offered rate as administered by ICE Benchmark Administration . . . for a period of time equal to each Interest Period." (*Id.*).  The "Adjusted LIBOR Rate" is defined as the sum of "the Applicable Margin plus the LIBOR Rate." (*Id.*).  The "Applicable Margin" under Contract 1 Note is 4.00% per annum.  (*Id.* Ex. A, Contract 1 Note at 1).  Contract 2 Note's "Applicable Margin" is 4.669% per annum.  (*Id.* Ex D at 1).  Contract 1 Note matured on December 22, 2018, while Contract 2 Note matured on October 14, 2018.  (Pl.'s Mot. for Summ. J, ECF No. 28-2, Ex. A, Contract 1 Note at 1, Ex. D at 1).

2

According to Defendants, Plaintiff was implicated in "the LIBOR Scandal" before the loans at issue in this case were made. (*See, e.g.*, Defs.' Resp., ECF No. 29-1, Cheryl Franco Aff. at ¶ 9). It was alleged that in 2012, several major financial institutions had colluded to fix the LIBOR rate. (*Id.* at ¶ 9 n.2). "Fines, lawsuits, and regulatory actions resulted from this revelation and, beginning December 31, 2021, the LIBOR rate is no longer permitted to be used to issue new loans in the United States." (*Id.*). The rate is due to be phased out in favor of the Secured Overnight Financing Rate ("SOFA") by 2023. (*Id.*) (citing James McBride, *Understanding the Libor Scandal*, Council on Foreign Relations (Oct. 12, 2016, 8:00 a.m.), https://www.cfr.org/backgrounder/understanding-the-libor-scandal). As part of a series of reforms, ICE Benchmark Administration replaced the British Bankers' Association ("BBA") as the LIBOR administrator in February 2014. (*See, e.g.*, Pl.'s Reply, ECF No. 30, at 5 n.4) (quoting *United States v. Allen*, 864 F.3d 63, 70 n.12 (2d Cir. 2017)).

On November 18, 2016, Cheryl Franco and Frank Franco entered into separate guaranties to pay Plaintiff the "Indebtedness" of Dando Vida and Dando Vida 007, including the sums due and owing to Plaintiff pursuant to the terms of Contract 1 Note and Contract 2 Note. (Pl.'s Mot. for Summ. J., No. 28-2, Peterson Aff. at ¶¶ 11-12, Ex. H, Ex. I).

As security for the loans, on November 18, 2016, Franco Defendants executed a mortgage ("Mortgage") covering real property located at 60 Golfview Drive, Warminster, Bucks County, Pennsylvania, 18974 (Parcel Id No. 31-069-065) ("Mortgaged Premises"). (*Id.* at ¶ 10, Ex. G). The Mortgage was recorded with the Recorder of Deeds of Bucks County on September 18, 2017 as Instrument No. 2017056236. (*Id.*).

Plaintiff submitted records concerning its loans together with an affidavit from Chris Peterson, Plaintiff's Special Credit Lead with a corporate title of Vice President who is

responsible for managing both loans.  (*Id.* at ¶¶ 1-2).  According to the records and Peterson's affidavit, the Borrowers have failed to make their required payments under the terms of the two notes, and they are in default.  (*Id.* at ¶¶ 4, 8, Ex. B, Ex. E).  Peterson also averred that Defendants have failed to cure the Borrowers' defaults and accordingly have defaulted on their guaranties.  (*Id.* at ¶¶ 11-14).

On August 26, 2019, Plaintiff filed a Complaint in Mortgage Foreclosure against Defendants.  (Compl., ECF No. 1).  Defendants filed their Answer on November 18, 2019.  (Answer, ECF No. 5).  After delays by the parties – especially Plaintiff – in returning the forms consenting to my jurisdiction, on April 21, 2021, Judge Jones ordered Plaintiff to show cause by May 4, 2021 as to why this matter (as well as its other action) should not be dismissed for want of prosecution.  (*Id.*).  Noting that Plaintiff apparently has abandoned this litigation, he stated that, if Plaintiff still intended to pursue this case, Plaintiff and counsel for Defendants should compete the consent form and return it to the Court "forthwith."  (*Id.* at 1 n.1).  By April 29, 2021, all of the parties had consented to my jurisdiction, and Judge Jones referred the cases to me.  (Consent & Order, ECF No. 11).

Additional pretrial conferences were held on May 7, 2021, and April 5, 2022.  (Rule 26(f) Report, ECF No. 13; Minute Entry No. 16; Minute Entry No. 26).  Following the close of discovery on June 6, 2022 (Scheduling Order, ECF No. 25), Plaintiff filed its Motion for Summary Judgment on July 13, 2022 (Pl.'s Mot. for Summ. J., ECF No. 28).

In support of its summary judgment motion, Plaintiff submitted Peterson's affidavit, which provided calculations of the outstanding balances, interest, and late fees and costs owed as of June 13, 2022, together with copies of the "transaction histories" for Contract 1 Note and Contract 2 Note and a "screen print" from the system it uses to service Contract 2 Note.  (Pl.'s

Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶¶ 4-5, 8-9, 15, Ex. B, Ex. E, Ex. F). Peterson also stated that, as to Contract 2 Note, "[i]nterest will continue to accrue until the date of judgment at the variable interest rate of 4.669% plus the LIBOR Rate." (*Id.* at ¶ 9). According to Peterson, Plaintiff also incurred attorneys' fees and legal expenses to enforce its rights. (*Id.* at ¶ 16).

Subsequently, Plaintiff was provided with a copy of an ATLA settlement statement concerning the proposed sale by Frank Franco of the real property located at 96 Reliance Circle, Hilltownship, Bucks County, Pennsylvania. (Defs.' Resp., ECF No. 29-1, Ex. A at 1). The Reliance Circle property was mortgaged as security for Loans 1 and 2. (*Id.* at ¶ 3, Ex. A). In an August 25, 2022 letter from its counsel to Defendants' attorney, Plaintiff consented to the sale of the Reliance Circle property, released its lien on the property subject to the receipt of the sale proceeds, and retained its lien on the remaining collateral. (*Id.* Ex. A at 1-2).

Defendants filed their opposition to the summary judgment motion on October 6, 2022, which included an affidavit executed by Cheryl Franco. (Defs.' Resp., ECF No. 29). Plaintiff filed its reply brief on November 30, 2022. (Pl.'s Reply, ECF No. 30). With its reply, it submitted a supplemental affidavit from Peterson. Relying on an updated "transaction history" and "screen print," Peterson acknowledged that Plaintiff had received a partial payment of $225,787.22 in August 2022 and that this payment was applied to the Contract 2 Note principal. (Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 6-7, Ex. C, Ex. D). He further explained that Plaintiff "continuously mailed monthly account statements to Dando Vida and Dando Vida 007 that reflected, among other things, transactions, interest, and payments" for the two notes and, as examples, he attached a copy of the initial monthly account statement for each note. (*Id.* at ¶¶ 5, 8) (citing Ex. B, Ex. E). According to Peterson's supplemental affidavit, as of November

23, 2022, the current amount owed on Contract 1 Note is comprised of the principal balance of $1,064,329.59, accrued interest of $35,689.07, and late fees and costs of $250.00, for a sum total of $1,100,268.66.  (*Id.* at ¶ 4) (citing Ex. A).  The current amount owed as of November 23, 2022 on Contract 2 Note consists of the principal balance of $746,440.66, accrued interest of $247,165.52, plus late fees and costs of $250.00, totaling $993,856.18.  (*Id.* at ¶ 7) (citing Ex. C, Ex. D).

## II.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party. *Id.*  It is not the Court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations.  Rather, the Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *See, e.g.*, *Matsushita Elec. Indus. Co.,* 475 U.S. at 587-88; *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the Court must accept as true the evidence adduced by the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 158-59 (1970)).

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the

moving party carries this initial burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  *See, e.g.*, *Anderson*, 477 U.S. at 256-57; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving party thereby must present something more than mere allegations, general denials, vague statements, or suspicions in order to defeat a properly supported motion for summary judgment.  *See, e.g.*, *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

In a mortgage foreclosure proceeding, the plaintiff must show "the existence of an obligation secured by a mortgage, and a default on that obligation."  *Chem. Bank v. Dippolito*, 897 F. Supp. 221, 224 (E.D. Pa. 1995) (citing *In re Kelly*, 150 B.R. 121, 122 (Bankr. M.D. Pa. 1992); *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)).  "[E]ntry of summary judgment is proper if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount."  *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998) (quoting *Landau v. W. Pa. Nat'l Bank*, 282 A.2d 335, 340 (Pa. 1971)); *see also, e.g.*, *White v. JP Morgan Chase Bank, N.A.*, No. 3:10cv1426, 2011 WL 3236197, at *3 (M.D. Pa. Jul. 27, 2011) ("Summary judgment is properly granted in mortgage foreclosure actions where the mortgagor admits that he is delinquent in mortgage payments.") (quoting *First Wis. Tr. Co. v. Strausser*, 653 A.2d 688, 694 (Pa. Super. Ct. 1995)).

**III.   DISCUSSION**

Plaintiff argues that it is entitled to summary judgment because it has clearly satisfied the elements of a mortgage foreclosure action. (Pl.'s Mem. of Law, ECF No. 40-1, at 7-10). Defendants oppose Plaintiff's motion on the grounds that there are genuine issues of material fact "as to the nature and amount of damages such that Plaintiff fails to meet its burden of proof." (Defs.' Resp., ECF No. 29, at 2). In support of this argument, they claim that Plaintiff's delay in litigating this case "evidence[s] not only the Plaintiff's lack of interest and prosecution" but also its "failure to meet its burden of proof, at summary judgment, as to the amount of the alleged damages." (*Id.* at 4). Defendants further contend that Plaintiff has failed to provide any details concerning the variable interest rate or the calculation of interest over the life of the loans, has not provided "backup" for the attorney's fees allocated to the two loans, and has not accounted for the payment of the "Release Price" made in August 2022. (*Id.* at 2-5) (citing Defs.' Resp., ECF No. 29-1, Cheryl Franco Aff. at ¶ 6). They also argue that there are issues of fraud arising of the LIBOR Scandal. (*Id.*). In its reply brief, Plaintiff argues that Defendants' assertions are both factually and legally unsupported and that Defendants have not met their burden of identifying evidence on a material issue that would permit a finder of fact to rule in their favor. (Pl.'s Reply, ECF No. 30, at 1-6). According to Plaintiff, this case "is nothing more than a straightforward suit to enforce commercial-purpose promissory notes and to foreclose mortgages granted to secure the promises to repay the notes to Plaintiff." (*Id.* at 1). Plaintiff notes that its "totals" do not include its exact legal fees and costs because such amounts are constantly changing over the course of the litigation. (*Id.* at 4).

The Court concludes that Plaintiff has met its burden as the party moving for summary judgment by presenting undisputed evidence establishing the elements of a mortgage foreclosure

action, and that Defendants have failed to present facts raising a genuine dispute of material fact as to the foreclosure claim.

Initially, there is no dispute that there is a valid recorded mortgage in a specified amount securing an underlying obligation.  On November 18, 2016, Defendants, husband and wife and the real owners of the Mortgaged Premises, executed and delivered the Mortgage to Plaintiff.  (Compl., ECF No. 1, at ¶ 14; Answer, ECF No. 5, at ¶ 14; Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶ 10, Ex. G, Mortgage at 1, 5, 13, 15).  The Mortgage secures two line of credit notes (Contract 1 Note and Contract 2 Note) executed by the Borrowers (Dando Vida, Dando Vida 005, and Dando Vida 007) together with the guaranties executed by Defendants in which they agreed to pay Plaintiff the "Indebtedness" of Dando Vida and Dando Vida 007.  (*See, e.g.*, *id.*, Mortgage at 1, Ex. A, Contract 1 Note at 1, 4-5, Ex. D at 1, 4-5, Ex. H at 1, 3, Ex. I at 1, 3).  The notes specify the amounts owed ($1,114,000.00, plus interest on the unpaid principal balance for Contract 1 Note and $972,227.88 together with interest on the unpaid principal balance for Contract 2 Note) and the respective maturity dates.  (*Id.* Ex. A, Contract 1 Note at 1, Ex. D at 1).

It is also undisputed for purposes of Plaintiff's summary judgment motion that Defendants have defaulted on their obligations.  Indeed, Defendants admit that they and the Borrowers "were unable to make timely payments on account of Loan 1 and Loan 2." (Defs.' Resp., ECF No. 29, at 2) (citing Defs.' Resp., ECF No. 29-1, Cheryl Franco Aff. at ¶ 5). Plaintiff's "transaction histories" for the two loans and "screen prints" from the system Plaintiff uses to service Contract 2 Note confirm that the Borrowers have failed to pay and that the other Defendants, in turn, have failed to honor their own obligations.  (*Id.* at ¶¶ 4-5, 8-9, Ex. B, Ex. E, Ex. F; Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 4, 6-7, Ex. A, Ex. C, Ex. D).

Defendants argue that there are genuine disputes of material fact as to the nature and amount of damages. (Defs.' Resp, ECF No. 29, at 2-5). However, proof of the specific amount of damages is not a necessary element of a foreclosure action under Pennsylvania law. *See, e.g., Wells Fargo, N.A. v. 2600 E. Carson Street Assocs.*, 2:17-CV-00764-CRE, 2018 WL 1183220, at *4 (W.D. Pa. Mar. 7, 2018). "[E]ntry of judgment is proper if mortgagors have admitted that the mortgage is in default, they failed to pay interest on the obligation and the recorded mortgage is in a specific amount." *Id.* Accordingly, "[j]udgment as a matter of law is appropriate 'even if the mortgagors have not admitted the total amount of the indebtedness in their pleadings' or briefing." *Id.* (quoting *Cunningham*, 714 A.2d at 1057). It is undisputed that the Mortgage is in default, Defendants have failed to pay interest, and the recorded mortgage is in a specific amount. In fact, there are only two remaining components of damages that must still be assessed: (1) the amount of interest that has accrued on Contract 2 Note from November 23, 2022 through the date of this Memorandum and accompanying Order[3] and (2) the amount of attorneys' fees and legal expenses incurred.[4]

Contract 1 Note and Contract 2 Note clearly set forth how the interest rates for the loans are to be calculated. (Pl.'s Mot. for Summ. J, ECF No. 28-2, Ex. A, Contract 1 Note at 1, Ex. D at 1). In his most recent calculations, Peterson averred that, as of November 23, 2022, Plaintiff was owed accrued interest on Contract 1 Note in the amount of $35,689.07 and accrued interest on Contract 2 Note totaling $247,165.52. (Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at

---

[3] Plaintiff's own submissions indicate that interest has not continued to accrue on Contract 1 Note after November 23, 2022, when it totaled $35,689.07. (Compl., ECF No. 1, at ¶¶ 17, 19; Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶¶ 5, 9; Pl.'s Reply, ECF No. 30-1, at ¶¶ 4, 7). Accordingly, the Court awards interest only in that amount.

[4] The Court directs the parties to submit briefing and any necessary documentation regarding these damages in the accompanying Order.

¶¶ 4, 7). A "special Credits Lead with a corporate title of Vice President," Peterson has personal knowledge of the transactions at issue (and access to Plaintiff's records concerning the transactions) because he is one of the employees responsible for managing the two loans. (Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. ¶¶ 1-2; Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 1-2). Peterson's calculations are based on and supported by Plaintiff's records, including the "transaction histories" showing the transactions, interest, and payments for the loans, examples of the monthly account statements (which provide the interest rate for the billing month and the next month), and "screen prints" for Contract 2 Note. (Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. ¶¶ 4-5, 8-9, Ex. B, Ex. E, Ex. F; Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 4-8, Ex. A-E). In contrast, Defendants have failed to point to any competent evidence indicating that Plaintiff's interest calculations are incorrect. Specifically, they have not proffered any additional evidence or identified any deficiencies or errors in the calculations and documentation provided by Plaintiff. Defendants offer unsupported allegations and general denials (Defs.' Answer, ECF No. 5, at ¶¶ 16-22), but these are insufficient to defeat Plaintiff's Motion for Summary Judgment. *See, e.g., Trap Rock Indus.*, 982 F.2d at 890; *Fireman's Ins. Co.*, 676 F.2d at 969; *see also Wells Fargo, N.A. v. Carr*, No. 3:04-CV-2792, 2007 WL 518150, at *4 (M.D. Pa. Feb. 12, 2007) ("If defendant mortgagors do not plead specific facts in response to the allegations in the complaint regarding the default and the amount due, said defendants are deemed to have admitted the allegations set forth in the complaint.") (citing *First Wis. Tr. Co.*, 653 A.2d at 692).

      The undisputed evidence also shows that Plaintiff had credited Defendants for the partial payment (i.e., the "Release Price") received from Defendants' sale of the Reliance Circle property. Obviously, its initial filings in support of the Motion for Summary Judgment could not

11

have credited Defendants for the payment because its motion was filed on July 13, 2022, Plaintiff did not receive notice of the proposed sale of the Reliance Circle property until August 22, 2022, and it did not consent to the sale itself until August 25, 2022. (Pl.'s Mot. for Summ. J., ECF No. 28; Defs.' Resp., ECF No. 29-1, Ex. A at 1-2). The "transaction history" statement for Contract 2 Note shows that a payment of $255,787.22 was posted and applied to the principal balance on August 29, 2022. (Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 6-7, Ex. C at 1, Ex. D (screen print)). Peterson's November 23, 2022 calculation of the unpaid principal balance specifically accounted for the credit. (Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶ 9, Pl.'s Reply, ECF No. 30-1, Peterson Suppl. Aff. at ¶¶ 6-7).

With respect to their "LIBOR Scandal" theory, Defendants have provided no specific facts indicating that the interest rates applicable to Loan 1 and Loan 2 were manipulated in any way. Instead, they assert that Plaintiff was implicated in the "LIBOR Scandal" in which bankers colluded to fix the LIBOR rate, resulting in fines, lawsuits, and regulatory actions, and point to the eventual replacement of the LIBOR rate with the "Secured Overnight Financing Rate" by 2023. (*See* Defs.' Resp., ECF No. 29, at 3 & n.3) (citing Defs.' Resp., ECF No. 29-1, Cheryl Franco Aff. at ¶ 9 & n.2; McBride, *supra*). However, they do not attempt to link these broad allegations of misconduct with either Plaintiff itself or the interest rates at issue in this case. In fact, Defendants acknowledge that the alleged malfeasance was discovered in 2012 and that the prohibition on using the LIBOR rate for new loans did not go into effect until December 31, 2021, well after the origination of their loans. (Pl.'s Mot. for Summ. J., ECF No. 28-2, Peterson Aff. at ¶¶ 6-7, 10, 11-12, Ex. A, Contract 1 Note at 1, 4-5, Ex. D at 1, 4-5, Ex. H at 3, Ex. I at 3; Ex. G, Mortgage at 1, 15; Defs.' Resp., ECF No. 29, at 3 & n.3 (citing Defs.' Resp., ECF No. 29-1, Cheryl Franco Aff. at ¶ 9 n.2)).

Finally, Defendants' "delay" assertions have no bearing on Plaintiff's Motion for Summary Judgment and, in any event, are without merit. Defendants do not explain how exactly the alleged delay and ongoing accrual of interest could raise a factual dispute sufficient to preclude summary judgment. Defendants' guarantees and the underlying loan agreements include "no waiver" provisions.[5] (Pl.'s Mot. for Summ. J., ECF No. 28-2, Ex. A, Contract 1 Loan Agreement at 21, Ex. C, Contract 2 Loan Agreement at 5, Ex. H at 2-3, Ex. I at 2-3). Additionally, it is undisputed that Plaintiff did not pursue many of its matters during the COVID pandemic. (Pl.'s Reply, ECF No. 30, at 2). Further, after initial delays on both sides in providing the forms consenting to my jurisdiction, Plaintiff diligently prosecuted its case while also engaging in multiple settlement conferences. (*See* Minute Entries, ECF Nos. 20, 23).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Moton for Summary Judgment is granted.

BY THE COURT:

 /s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge

---

[5] The Mortgage also states that Plaintiff shall not be deemed to waive any rights under the Mortgage unless the waiver is given in writing signed by Plaintiff and that no delay on its part in exercising any right shall operate as a waiver of its rights. (Pl.'s Mot. for Summ. J., ECF No. 28-2, Ex. G, Mortgage at 11).